# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

COMPLETE PROTOTYPE
SERVICES, INC.,
           Plaintiff,
     v.

TRANS   AM   WORLDWIDE,
LLC,
           Defendant.

Case No. 16-14254
Hon. Terrence G. Berg

## OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION TO DISMISS (DKT. 19)

## I.    Introduction

This is a breach of contract case. In January 2015, the Parties agreed that Plaintiff would manufacture an automotive bumper for Defendant. After Plaintiff made a few mockups and collaborative adjustments to specifications, Defendant approved Plaintiff's quote to make 50 parts for $134,600. Plaintiff delivered the parts. But Defendant did not pay the total due under the contract. Plaintiff now seeks to recover the unpaid balance of $112,897. Defendant Trans Am Worldwide, LLC, incorporated and headquartered in Florida, has moved to dismiss claiming that this Court has no personal jurisdiction over it.

Defendant previously moved to dismiss the case under Fed. R. Civ. P. 12(b)(2), arguing that Plaintiff failed to plead facts sufficient to establish this Court's personal jurisdiction over Defend-

ant. Dkt. 6. The Court denied that motion without prejudice in order to allow Plaintiff to amend its complaint. Dkt. 14. Plaintiff filed an amended complaint, Dkt. 18, and Defendant has now filed this renewed motion to dismiss. Dkt. 19.

For the reasons outlined below, Defendant's Renewed Motion to Dismiss is **DENIED**.

## II.    Background

The Parties first met at a Nevada trade show in November 2014. Dkt. 19, Pg. ID 279; Dkt. 19-2, Pg. ID 296. It is not clear from the record whether an agreement was formed at that time, Dkt. 21, Pg. ID 371-72, but in January 2015, Plaintiff received a purchase order from Defendant for tooling and 25 Trans Am fascias (automotive bumpers). Dkt. 18, Pg. ID 228. Throughout that month, the Parties negotiated about engineering specifications and fabrication timelines. Dkt. 18, Pg. ID 228. In early February, Defendant's representative visited Plaintiff in Michigan to review some data concerns. Dkt. 18, Pg. ID 228. In April, Plaintiff completed the first two bumpers and Defendant's agent again came to Michigan to pick them up. Dkt. 18, Pg. ID 229.

In May, Defendant expressed satisfaction with the overall look of the bumpers, but wanted to use a tougher, more expensive material. Dkt. 18, Pg. ID 229. So in June, Plaintiff fabricated two more bumpers using the new materials and sent them to Defend-

ant, who responded with another engineering update. Dkt. 18, Pg. ID 229. When reviewing the update, Plaintiff found data that suggested there would be a gap in the headlamps. Dkt. 18, Pg. ID 229. Defendant then shipped sample headlamps to Plaintiff to inspect. Dkt. 18, Pg. ID 230. According to Plaintiff, these headlamps had the same gaps found in the data. Dkt. 18, Pg. ID 230. On June 29, 2015, one of Defendant's representatives visited Plaintiff in Michigan to review the project. *Id.*

Throughout July, the Parties continued to tweak specifications and the production timeline. Dkt. 18, Pg. ID 231. On August 4th, Defendant submitted a revised purchase order for the tooling and production of 50 Trans AM rear fascias. Dkt. 18, Pg. ID 235; Dkt. 18-8, Pg. ID 253. Plaintiff provided a new quote of $134,600, which decreased the price of tooling and increased the number of parts to 50. Dkt. 18, Pg. ID 235. Defendant approved the new quote on September 10, 2015. Dkt. 18, Pg. ID 235. Plaintiff then made and shipped two more bumpers to Defendant in Florida. Dkt. 18, Pg. ID 231.

In October, another one of Defendant's representatives came to Michigan to review the project. Dkt. 18, Pg. ID 231. Plaintiff asked for approval of recent tooling changes, and the representative signed off on a mockup in person. Dkt. 18, Pg. ID 231. Defendant gave Plaintiff a check for $4,600. Dkt. 18, Pg. ID 235. Later that

month, Defendant told Plaintiff the part fit well but they were waiting on ownership for an official signoff. Dkt. 18, Pg. ID 231.

Then, on October 29th, Defendant reported that depressions were appearing on the front bumpers after exposure to the sun. Dkt. 18, Pg. ID 232. In November, Plaintiff shipped rear bumpers and Defendant expressed its satisfaction with them. Dkt. 18, Pg. ID 232. In December, Defendant requested 8 more front bumpers with a thicker top area. Dkt. 18, Pg. ID 232. Plaintiff then provided a quote for the thickness modification. Dkt. 18, Pg. ID 232.

After two conference calls (in December 2015 and January 2016), Plaintiff's President visited Defendant in Florida. Dkt. 20, Pg. ID 341. New, thicker front bumpers were shipped to Defendant in March 2016. Dkt. 18, Pg. ID 232. In April 2016, Defendant informed Plaintiff of another problem: inner ribs were showing through after sanding. Dkt. 18, Pg. ID 233. Defendant cancelled its order for front bumpers but kept an order for additional rear ones, which Plaintiff filled by shipping 10 parts in May. Dkt. 18, Pg. ID 233.

In June 2016, the parties held a conference call to discuss past due payments but were unable to resolve the dispute. Dkt. 18, Pg. ID 233. Plaintiff alleges that it has sustained damages of $112,897.00 because Defendant has paid Plaintiff only $4,600 by

check in October 2015, with the remainder of the amount owed for parts and tooling having gone unpaid. Dkt. 18, Pg. ID 233

Plaintiff filed suit in Macomb County Circuit Court and Defendant removed to this Court in December of 2016. Dkt. 1, Pg. ID 2. Defendant then moved to dismiss the case, arguing that Plaintiff had failed to plead facts sufficient to establish this Court's personal jurisdiction over Defendant. Dkt. 6. This Court denied that motion without prejudice, allowing Plaintiff to amend its complaint. Dkt. 14. Plaintiff filed an amended complaint. Dkt. 18. And Defendant has filed a renewed motion to dismiss. Dkt. 19. Having considered the Parties' submissions, the Court finds that oral argument would not help the Court resolve Defendant's motion. Thus the Court will decide the motion based on the Parties' written submissions. *See* E.D. Mich. LR 7.1(f). For the reasons set out in detail below, Defendant's motion will be denied.

### III.  Standard of Review

Upon a defendant's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of establishing that jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

A district court has three options when deciding a 12(b)(2) motion. *Id*. It may rule based on written submissions and affidavits, hold an evidentiary hearing, or order discovery limited to the per-

sonal jurisdiction issue. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Theunissen*, 935 F.2d at 1458. "The court has discretion to select which method it will follow[.]" *Theunissen*, 935 F.2d at 1458 (internal citations omitted). Neither party has asked for an evidentiary hearing or for limited discovery. And the Court finds that the Parties' written submissions and affidavits are sufficient to resolve Defendant's motion. So the Court will decide the motion based solely on those submissions and affidavits.

Thus "the burden on the plaintiff is relatively slight and the plaintiff must only make a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Air Prod.,* 503 F.3d at 549 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988; *Theunissen,* 935 F.2d at 1458) (internal quotation marks omitted). The materials must be reviewed in the light most favorable to the plaintiff and "the district court should not weigh the controverting assertions of the party seeking dismissal." *Theunissen,* 935 F.2d at 1458 (internal quotation marks omitted).

## IV.   Analysis

### a. Personal Jurisdiction

"Personal jurisdiction can be either general or specific depending upon the nature of the contacts that the defendant has with

the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). General jurisdiction depends on continuous and systematic contact with the forum state, such that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant. *Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). Specific jurisdiction grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state. *Id.* Here, Plaintiff argues that this Court has specific jurisdiction over Defendant due to the Defendant's contact with the forum state. Dkt. 10-1, Pg. IDs 7-12.

A federal court's exercise of jurisdiction over litigants must be both "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 888 (6th Cir. 2002). Michigan's long-arm statute gives the "maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment." *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1236 (6th Cir. 1981). Accordingly, if jurisdiction is proper under the Fourteenth Amendment, it is also proper under Michigan's long-arm statute. The long-arm analysis thus merges into the due process analysis and the Court need only determine whether exercising personal jurisdiction violates consti-

tutional due process. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

Due process is satisfied if a defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation omitted). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

The Sixth Circuit encapsulated the Supreme Court's "minimum contacts" jurisprudence in the three-part test articulated in *Southern Machine v. Mohasco*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prod.*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

Though announced in 1968, the *Mohasco* test still provides the elemental structure for the Sixth Circuit's personal-jurisdiction analysis. Where relevant however, the analysis below discusses subsequent Supreme Court jurisdiction decisions that pertain to these facts.

### i. Minimum Contacts

Defendant first argues that it did not purposefully avail itself of the privilege of acting in Michigan because its contacts with Michigan were "random, fortuitous, and attenuated." Dkt. 19, Pg. ID 279 (quoting *Compuserve v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996)). Defendant characterizes the relationship between the parties as a "one-off transaction" initiated by Plaintiff at a Nevada trade show. Dkt. 19, Pg. ID 279. According to Defendant, its contacts with Michigan only multiplied due to Plaintiff's unilateral actions in shipping defective products. Dkt. 19, Pg. ID 279.

Plaintiff responds that in January 2015, Defendant began conducting business in Michigan that it knew would amount to several hundred thousand dollars. Dkt. 20, Pg. ID 346-47. Plaintiff submits that the companies took part in an on-going business relationship over the next year, during which Defendant sent a number of representatives to Michigan including its owner, general manager, and designer to approve designs, make engineering

modifications, and pick up finished products. Dkt. 20, Pg. ID 346-47.

To address Defendant's argument that its contacts with Michigan were too attenuated to constitute purposeful availment, it is helpful to separate[1] the minimum contacts requirement from *International Shoe*, 326 U.S. at 316, and the purposeful availment requirement added later by *Hanson v. Denckla*, 357 U.S. 235 (1958).

The minimum contacts requirement grew out of the realization that jurisdictional rules requiring a corporation's "presence" within a state's borders were hamstringing the courts. *Int'l Shoe*, 326 U.S. at 316 ("…it is clear that unlike an individual [a corporation's] 'presence' … can be manifested only by activities carried on in its behalf …").

The initial minimum contacts test granted courts a great deal of flexibility. *Id.* at 318. The Supreme Court explained that some corporate acts in a state were too incidental to justify the exercise

---

[1] The two elements are often combined, as "minimum contacts" refers to objective qualities of the defendant's activities while purposeful availment refers to subjective qualities of the same. Nonetheless, they are historically and conceptually distinct. In this case, Defendant's arguments that its contacts were too "attenuated" will be considered under the rubric of minimum contacts while its arguments that its contacts were "random [and] fortuitous" will be discussed under the rubric of purposeful availment.

of personal jurisdiction, while "other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit." *Id.* But in order for a federal court to exercise personal jurisdiction over a party, the party "must have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316.

The Sixth Circuit, when formulating the *Mohasco* test, found this principle so well established that the phrase "minimum contacts" was not expressly included in the court's test. As the court explained, "[t]oday, it can no longer be doubted, if it ever was, that the doing of *an act* or the causing of a consequence in the forum state by the defendant can satisfy the requirements of the 'minimum contacts' test." 401 F.3d at 380 (emphasis added). Thus, Defendant's characterization of its relationship with Plaintiff as a "one-shot transaction" would not necessarily change the outcome of the analysis.

Considering the facts alleged by Plaintiff, they are more than sufficient to satisfy the minimum contacts requirement: Defendant's contacts with Michigan include at least three project-related visits to the jurisdiction by Defendant's personnel; at least three requests by Defendant to change the engineering specifications, which impacted work being conducted here; at least three sub-

stantial changes to the purchase agreement for parts to be fabricated in the district; and many more smaller, logistical communications that surrounded these contacts with the forum.

Even if Defendant were correct that Plaintiff's inadequate performance caused the parties' relationship to continue longer than Defendant's initial expectations, that issue is relevant to the question of breach of contract, not to whether Defendant's contacts with the forum were sufficient to allow an exercise of personal jurisdiction. Here, Defendant had an ongoing business relationship with Plaintiff that was partly conducted in, and fully directed toward the forum. Such contacts were sufficient to allow the exercise of personal jurisdiction.

### ii. Purposeful Availment

Purposeful availment is a separate requirement that, given the highly flexible minimum-contacts requirement, has become the primary site of a personal jurisdiction inquiry. The requirement originated in *Hanson v. Denckla*, a case concerning Florida's personal jurisdiction over a Delaware trust company. 357 U.S. at 238. A woman had created a trust with the Delaware company while residing in Pennsylvania. *Id.* at 238-43. She later moved to Florida. Once there, she would occasionally contact the company to conduct administrative business. *Id.* Upon her death, a dispute arose over the probation of her will. *Id.* The Supreme Court held

that Florida could not exercise personal jurisdiction over the Delaware corporation. The plaintiff had unilaterally reached out from Florida and the defendant responded, but the defendant never purposely reached into Florida. The Court reaffirmed this reasoning almost 30 years later:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting *Hanson v. Denckla*, 357 U.S. at 253).

In addition to *Burger King's* reaffirmation of the *Hanson* purposeful availment principle, the Supreme Court has addressed the situation where a company does not directly place its products in a state but can foresee being carried there by the "stream of commerce." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Asahi Metal Indus. Co., Ltd. V. Superior Court of California, Solano County*, 480 U.S. 102 (1987).

In *Asahi*, the Court unanimously ruled that California had no personal jurisdiction over a Japanese company, Asahi, when the

company had sold valve assemblies to a Chinese tire manufacturer that incorporated Asahi's assemblies into its tires, which were involved in a California accident. But the *Asahi* Court was split in its reasoning. Justice Brennan, joined by three Justices, stressed the unfairness of making Asahi litigate in the United States when more appropriate forums were available in China and Japan. *Asahi*, 480 U.S. at 116-21. Justice O'Connor, also joined by three justices, stressed that, although Asahi was aware that some of its products would end up in California, the company had not purposefully availed itself of California's market by taking direct, unmediated action toward the state. *Id.* at 112. Justice O'Connor's test required: "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State, for example . . . advertising in the forum State . . . or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

The divided *Asahi* opinion eventually led to a circuit split, with the Sixth Circuit following Justice O'Connor's reasoning, which has become known as the "stream of commerce plus" theory. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003).

Defendant contends that it did not purposefully avail itself under the "stream of commerce plus" test because it did not "[touch]

the stream of commerce with respect to Michigan: (1) through sales of Defendant's products; or (2) through purchase of goods or services from Michigan." Dkt. 19, Pg. ID 280.

While the first part of Defendant's contention may be true—Defendant did not introduce products into the stream of commerce directed toward Michigan—the second part of Defendant's contention (that it did not purchase goods or services from Michigan) is not. Moreover, whether Defendant was targeting its own products at Michigan through the stream of commerce is irrelevant to whether its relationship with Plaintiff constitutes purposeful availment. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007) (holding that personal jurisdiction was appropriate where Kansas corporate defendant had long term purchase agreement with Michigan manufacturer). Plaintiff need only make a prima facie showing of purposeful availment under the *Mohasco* test, which mirrors the simple, unmodified *Hanson/Burger King* formulation that governs all non-"stream of commerce" cases:

> Where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there

*Burger King*, 471 U.S. at 475 (citations and quotation marks omitted); *e.g.*, *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d

544 (6th Cir. 2007); *Kerry Steel*, 106 F.3d at 150; *Compuserve*, 89 F.3d at 1263; *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1300 (6th Cir. 1989).

Defendant relies on the Sixth Circuit's decision in *Kerry Steel* for the proposition that logistical activities stemming from a purchase contract with a Michigan corporation may not be enough to constitute purposeful availment on their own. However, the facts of that case are distinguishable from the current case.

In *Kerry Steel*, a Michigan plaintiff solicited an Oklahoma defendant to buy steel coils. 106 F.3d at 148. The parties negotiated and expressed mutual assent by fax and telephone. *Id*. The defendant took possession of the goods in Illinois. There was no evidence to suggest the goods had ever been within Michigan borders. The defendant found the goods below agreed quality standards and refused to pay. *Id*. The plaintiff brought suit in Michigan and the defendant moved to dismiss for lack of personal jurisdiction. *Id*.

The Sixth Circuit applied the *Mohasco* test and held that the defendant: "in response to an unsolicited sales call, ordered products from a Michigan seller and negotiated with the seller via fax and telephone to finalize the transaction. This does not constitute a purposeful availment of the privilege of transacting business in Michigan." *Id*. at 152. The Court explained that "Paragon has no

employees or offices in Michigan, and there has been no showing that any Paragon employee has ever been in Michigan for the purpose of conducting business there. It was Kerry Steel that initially contacted Paragon in Oklahoma—and Paragon responded without leaving home, as it were." *Id.* at 151. Here, in contrast, several of Defendants' employees left home and traveled to Michigan to conduct business.

The *Kerry Steel* Court also relied on factual similarities to *LAK, Inc. v. Deer Creek Enter.*, where a Michigan corporation sued an Indiana partnership in Michigan over a one-time sale of land in Florida that the plaintiff had solicited. *Id.* at 152-53 (citing *LAK*, 885 F.2d at 1301). The logistical activities of negotiating over the phone from Indiana and signing the contract in Michigan were not enough to establish the defendant's purposeful availment. *Id.*

The facts of this case are notably different from the one-time transactions at issue in *Kerry Steel* and *LAK*. Here, the Parties' relationship did not consist of logistical communications leading to a one-time transfer of prefabricated, publicly-marketed property. Rather, in this case the Defendant collaborated with Plaintiff for over a year to create customized parts that would never have existed but for Defendant's purposeful actions toward Michigan.

Unlike in *Kerry Steel* and *LAK*, the parties here engaged in much more than an exchange of purchase orders or signing of an

instrument; they had a creative, mutual exchange of expertise and productive capabilities that impacted the forum state. Defendant's employees came to Michigan to participate in the process of assuring that the parts being made in Michigan were fabricated in an acceptable manner.

Defendant contends that there has been "no affirmative effort on the part of Defendant to reach into Michigan for its own gain." Dkt. 19, Pg. ID 282. But Defendant ordered custom bumpers from Plaintiff. By working with Plaintiff to design these custom bumpers, Defendant: (1) knowingly entered into a relationship with a Michigan company; (2) purposefully engaged in multiple communications, exchanges, and renegotiations over a period longer than a year; (3) knowingly entered such a course of dealing, as evidenced by its failure to terminate the relationship throughout that period. "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479. Here, Defendant purposefully established minimum contacts with Michigan in order to secure the custom bumpers it sought.

### iii. Cause of Action arising from Defendant's Activities in the Forum

18

Defendant maintains that its relationship with Plaintiff consists solely of Plaintiff's unilateral actions toward Florida. Dkt. 19, Pg. ID 284-85. Defendant contends that Plaintiff's cause of action did not arise from Defendant's activities in Michigan because (1) Plaintiff is not asserting a claim based on the fitness of a product purchased from Defendant and consumed or used in Michigan and (2) the claims merely arise from Defendant's purchase of goods from Michigan, shipped to Florida for a Florida assembly/conversion process, meaning the claims arise from "an alleged debtor-creditor relationship," not the conduct of any business in Michigan by Defendant. Dkt. 19, Pg. ID 284.

This argument conflates the first two elements of the *Mohasco* test. The purposeful availment analysis focuses on the activities connecting the defendant to the forum. *Air Prod.*, 503 F.3d at 551. The "arising from" analysis examines the connection between that activity-forum state nexus and the subject matter of the suit. *Id.* at 553.

The "arising from" requirement is a "lenient standard," *Air Prod.*, 503 F.3d at 553; *Bird*, 289 F.3d at 875, that is satisfied as long as the "defendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe*, 89 F.3d at 1267. This requirement would not permit personal jurisdiction when (1) the defendant has sufficient, purposeful contacts in one

domain of activity but the plaintiff sues over activities in another, or (2) the subject matter has little to do with the forum state, as in *Kerry Steel* and *LAK*. The present case does not fall in either category.

Here, the lawsuit pertains to the contract for goods that were purchased and transferred from Michigan, which is sufficient to satisfy the "arising from" element. *Air Prod.*, 503 F.3d at 553 ("One element of Air Products' cause of action for fraudulent transfer is that there be a debtor-creditor relationship which, as just explained, was made possible by and would not have existed but for Defendants' business relationship with Air Products."); *see also Neo-Gen Corp. v. Neo-Gen Screening, Inc.*, 232 F.3d 883, 892 (6th Cir. 2002) (holding that a but-for causal relationship between the actions that allegedly establish minimum contacts and the possibility of the plaintiff prevailing in its present cause of action is enough to satisfy the "arising from" requirement). Thus, because this case involves Defendant's failure to pay for goods that it purchased from Michigan, the Court finds that Plaintiff's cause of action arises from Defendant's activities in Michigan.

### iv. Reasonableness

Finally, Defendant argues that it unreasonable to hail it into a Michigan court. Dkt. 19, Pg. ID 287. The "reasonableness" inquiry under the *Mohasco* test has evolved to mirror the Supreme Court's

four-factor "fair play and substantial justice" analysis. *Air Prod.*, 503 F.3d at 554 (quoting *Burger King*, 471 U.S. at 477-78; *World-Wide Volkswagen*, 444 U.S. at 292).

> In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.

*Air Prod.*, 503 F.3d at 554 (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir.2005)).

When, as here, the plaintiff has established the purposeful availment and "arising from" elements, "an inference of reasonableness arises and only the unusual case will not meet this third criteria." *Air Prod.*, 503 F.3d at 554 (quoting *Theunissen,* 935 F.2d at 1461). "[The defendant] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 447).

Defendant argues that litigating in Michigan will require essential personnel to leave the business unattended while travelling to participate, Dkt. 19, Pg. ID 287-88, and that this sort of travel has a disparate, unreasonable impact on a small business. Dkt. 19, Pg. ID 288. Furthermore, Defendant submits that it

would incur disparate costs if it decides to bring a counterclaim. Dkt. 19, Pg. ID 288.

Defendant also argues that Michigan lacks any notable interest in this case, which concerns a financial dispute between private companies that has no impact on public policy. Dkt. 19, Pg. ID 288. Defendant contends that Florida, on the other hand, has a public policy interest in protecting its businesses from defective out-of-state products. Dkt. 19, Pg. ID 289.

In *Air Products*, the Sixth Circuit rejected substantively identical contentions: "[a]lthough it would be a burden on [defendant] to travel from Kansas for this litigation, Michigan clearly has an interest in protecting a company whose principal place of business is located in Michigan . . . the exercise of personal jurisdiction is reasonable under the circumstances of this case." 503 F.3d at 555. The same is true here: Michigan has an interest in protecting a company whose principal place of business is located in Michigan, and who has not been paid for work that it did for Defendant.

Defendant also raises the contention that it did not do business in Michigan, while Plaintiff purposefully did business in Florida. Dkt. 19, Pg. ID 288-89. As such, Defendant argues, it is more reasonable to require Plaintiff to bring suit in a state that it reached into than for Defendant to defend in a state with which it has attenuated contacts. Dkt. 19, Pg. ID 289. As explained above, De-

fendant's argument that it never reached into Michigan is misplaced.

Finally, Defendant argues that the interstate judicial system's interest in efficient resolution is best served in Florida because the case could commence there immediately without a forum dispute. Dkt. 19, Pg. ID 289. Whenever the parties are from different states, one or the other party will suffer some inconvenience from litigating the matter in a remote forum. There is no reason to believe the inconvenience to Defendant would be greater than to Plaintiff. As to the need for efficiency in resolving disputes about the forum, that need is met by this Court's decision in determining that personal jurisdiction is appropriate.

\*   \*   \*

After application of the *Mohasco* test, the Court concludes that Defendant purposefully availed itself of the privilege of acting in Michigan, that the cause of action in this case arises from Defendant's activities here, and that Defendant's actions here have a substantial enough connection to Michigan that it is reasonable for the Court to exercise personal jurisdiction over Defendant.

## V.    Conclusion

For the foregoing reasons, Defendant's Renewed Motion to Dismiss is **DENIED**.

**SO ORDERED.**

Dated: August 25, 2017   s/Terrence G. Berg
　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on August 25, 2017.

　　　　　　　　　　　　s/A. Chubb
　　　　　　　　　　　　Case Manager